Texaco Inc.

By: A. C. Decrane, Jr.

------------------------

By: --------------------

James COOK

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare.

Civ. A. No. 77–2390.

United States District Court, E. D. Pennsylvania.

Oct. 13, 1978.

Linda M. Bernstein, Staff Atty., CLS, Philadelphia, Pa., for plaintiff.

Alexander Ewing, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

VAN ARTSDALEN, District Judge.

Plaintiff appeals from the final determination of the Secretary of Health, Education and Welfare terminating, as of September 1, 1974, plaintiff's entitlement to disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Cross motions for summary judgment have been filed. Because there is substantial evidence to support the decision of the defendant, that decision will be affirmed.

Plaintiff, who had worked primarily as a construction worker, applied for disability insurance payments, claiming total disability within the requirements of the Social Security Act because of heart disease and diabetes. His claim was allowed. Later, he also applied for supplemental security income benefits by reason of his disability, which application was granted, effective as of August 18, 1966. Thereafter plaintiff was employed as a plumber's helper on a part-time basis from October 1970 through September 1972 and from April through June of 1973. From July 1974 through April 1975, he worked two nights a week on weekends as a night watchman on 12 hour shifts. The Secretary, through the decision of the Administrative Law Judge (ALJ), found that such work activity showed an ability to engage in substantial gainful activity, as of the time that he commenced the night watchman job in July 1974. The ALJ further found that the work as a night watchman, constituting two 12 hour night shifts per week constituted substantial gainful activity that was performed after completion of the nine month trial work period. Payment of benefits under the statutes was, therefore, terminated.

20 C.F.R. § 404.1539 provides that a "disability" shall be found to have ceased in the month in which the individual has regained his ability to engage in substantial gainful activity. 20 C.F.R. § 404.1536 provides for a "trial work period" of nine months following a finding of disability. These need not be consecutive months by express wording of the statute. Included are any "services," which are defined as "any activity, even though not gainful activity, which is performed by an individual in employment." 20 C.F.R. § 404.1536(d).

20 C.F.R. § 404.1534(b) provides that if an individual's average earnings from work activities exceed a specified sum, such "shall be deemed to demonstrate his ability to engage in substantial gainful activity unless there is affirmative evidence that such work activities themselves establish that the individual does not have the ability to engage in substantial gainful activity." Plaintiff's average earnings while employed as a night watchman exceeded the requisite

sum, thus creating a rebuttable presumption of ability to engage in substantial gainful activity.

Plaintiff's major legal contention is that the part-time employment as a plumber's helper may not be included in the nine month trial work period, because it is a different type of work from being a night watchman. The ALJ found that the plaintiff's job as a night watchman demonstrated his ability to engage in gainful activity, and that this job followed the allowable trial work period. Neither the Act nor the regulations support plaintiff's position. Plaintiff's counsel cites no case law authority, but asserts that the ALJ's interpretation "is not reasonable." If plaintiff's argument is sound, a person receiving benefits under the program could move from one type of job to another every few months and still claim that the period of trial work had not commenced.

Plaintiff further contends that even if, under the regulations, plaintiff's employment as a night watchman created a rebuttable presumption of ability to engage in substantial gainful activity, plaintiff overcame the presumption by showing that he actually did such a poor job as to establish his lack of ability to engage in substantial gainful activity. That, however, is a factual matter which the Secretary determined adversely to plaintiff's argument. The ALJ found as a fact that the work performed commencing in July, 1974, constituted substantial gainful activity, and that plaintiff's disability ceased as of July, 1974. These findings were supported by substantial evidence, under the regulations, and plaintiff's evidence on the issue, consisting primarily of his own testimony was not of such strength as to overcome the rebuttable presumption as a matter of law, even if the evidence is accepted in its entirety as being accurate.

Plaintiff's position is that although employed as a night watchman, he was really incapable of carrying out his duties in a satisfactory manner. The evidence on this issue was presented primarily by plaintiff's own testimony. He was employed by Wallace Company as a night watchman, two nights a week on the weekend. He had this job for less than one year, when he was "laid off" around the latter part of April, 1975. His work shift hours were from 8 o'clock at night until 8 o'clock in the morning on Saturday and Sunday nights of each week, at an hourly rate of $2.50. The plaintiff testified as to his job performance as follows:

> I went on the job; but what I mean is there that I got paid whatever I didn't stay on there, you know, because I used to have pains, you know, across my chest and those kids was irritating me, so I just came on home. So they called up and they couldn't catch me there on the job, so that's why they fired me; they just told me they didn't need me no more.

> I had to watch the kids. They were building a school, you know; a piece onto a school, and I had to keep the school children out of there.

> I'd walk around and, you know, and try to keep them from out of the school. But eventually they'd get on my nerves so that I'd only, just, don't worry about 'em and let 'em go and I'd take off and go home on it, an hour or so.

When asked about his physical activities on the job, i. e., the amount of walking involved, he replied: "I'd say maybe about a half a block or something like that, around the school, a block. And when I got tired I'd just go and sit down, that's all." He testified that the job required no climbing. On all of the evidence, the Secretary was able to conclude, upon substantial evidence, that such work did constitute substantial gainful activity.

Finally, plaintiff's counsel has set forth plaintiff's medical history in great detail. Undoubtedly plaintiff had many serious health problems that severely restricted his ability to obtain employment. The agency clearly considered these impair-

ments in initially determining that the plaintiff was entitled, by reason of poor health, to benefits under Titles II and XVI of the Social Security Act. Regardless of the severity of physical infirmities, a person who regains the ability to engage in substantial gainful activity within the definitions of the statute and regulations is not entitled to continued benefits. The work performed by plaintiff established to the satisfaction of the Secretary that, under the regulations, plaintiff was able to engage in substantial gainful activity as of July 1974. That determination meets the "substantial evidence" test.

Although benefits were terminated under both Titles II and XVI, both counsel appear to agree that the same standards apply as to entitlement under these separate programs and titles of the Social Security Act. There would appear to be no basis for distinction under the facts of this case.

There is likewise no basis for a remand for reconsideration. Plaintiff's counsel does not suggest that there is any substantial evidence that was omitted or that should in justice be presented. Essentially, a remand is requested so that plaintiff's counsel may urge upon the Secretary or his designated agent the same issues and arguments raised on this appeal. In some circumstances, where a claimant is unrepresented by counsel and it appears that important issues were not fairly or adequately considered by the Secretary, a remand would be proper.

In this case, however, the essential arguments that are being raised were presented by letter to the Appeals Council by plaintiff's attorney, prior to the final decision of the Appeals Council. (See pages 3 through 10, incl. of the transcript). Remand for further reconsideration would not be proper.